20-2431 and 21-1659, Guadalupe Barrera Arreguin et al. v. Merrick B. Garland Ms. Hewitt, you're up. Thank you, Your Honor. We're here on two petitions for review. First, on the merits of Ms. Barrera Arreguin's applications for asylum, withholding of removal, and protection under the CAT. Second, on the denial of her motion to reopen. Both of these petitions essentially boil down to one concept. The respondents cannot have it both ways. They cannot deny Ms. Barrera Arreguin's application for asylum, stating that the alleged safety of her husband's family members prevents her from getting asylum. Then, on the other hand, deny her motion to reopen when she shows the disappearance of these same family members, and then say that the deaths of these family members would not have affected the merits of her asylum case. The respondents in performing these mental gymnastics have misapplied binding case law and have wholesale ignored directions from the Supreme Court on how to deal with motions to reopen. On the motion to reopen and, of course, the regulations are stringent on this because it's a disfavored remedy. There has to be the presentation of material new evidence. In that regard, you have described what's in the record, but it seems to me for you to prevail on the reopening issue. There has to be a translated copy of the report to the prosecutor of Apatzen at AR 27-36. I can't find a translated copy. I see a self-translated copy of a petitioner's declaration, which is not really very factual. It's the report to the prosecutors that would arguably present material new evidence on the can't-have-it-both-ways issue you're presenting. Yes, Your Honor, and that translated copy was provided. I'm pulling up the record now to tell you exactly where it was at. I can get that exact number in the administrative record on rebuttal, but yes, that translated copy was provided. It has to be. I hope it's in the administrative record because if it's not, you have a problem. I disagree, Your Honor. It is within the administrative record, but even without that, the declarations provided also credibly alleged that the brothers had been disappeared. Wait, you just made a credibility assertion and there's been no credibility finding at that stage of the proceeding. No, Your Honor, but Ms. Barrera-Arreguin was found credible, and INS Viabudu- That was before. That was before she lost. INS Viabudu directs the board, directs the agency to make all inferences in favor of the movement for motions to reopen. So yes, it is a stringent standard. Matter of Coelho, which the respondents misapplied, requires us to show that the decision of the underlying court would have been likely different if this evidence had been proffered before. However, INS Viabudu does direct the agency to make inferences in favor of the respondent. Therefore, as I said, I will get that exact administrative record page number for you on rebuttal. Thank you. Yes. The other thing is that, so discussing Matter of Coelho, the respondents allege that you have to show a prima facie case for asylum, inferring that Ms. Barrera-Arreguin should have shown every element of asylum in this new evidence. However, Matter of Coelho, which this court recently upheld in Caballero-Martinez v. Barr, only requires a prima facie showing of statutory eligibility for the relief. Ms. Barrera-Arreguin, just like Mr. Coelho, has already shown her eligibility for the relief, and therefore the prima facie eligibility is already established. In saying that she must show every element of asylum in order to merit reopening, the agency has misconstrued Matter of Coelho. The important thing about this evidence provided in the motion to reopen is that it goes to the heart of the immigration judge's denial of the case. The immigration judge said, because there are extended family members in Mexico still that are safe, you cannot prove nexus, which is a misrepresentation of both the PSG and case law. However, this was the IJ's belief. Then the board says the death of these same family members would not have changed his decision. That's arbitrary and contrary to law to make that decision. The immigration judge in the agency and the respondents in this appeal have misapplied this court's decision in Krasnopetsev v. Ashcroft. It's important to note that the facts of Krasnopetsev are inapposite in this case. Krasnopetsev attempted to impute his family's persecution on him. Ms. Barrera-Arreguin had her own persecution that was related to her family relationship. Krasnopetsev could not describe the persecution his family suffered. Ms. Barrera-Arreguin gave detailed, credible, accurate testimony about the threats she received. Her husband was murdered. Her husband disappeared along with a commander. The wife of that other commander was murdered. The threats, as I read the briefs and so forth, the threats included leave town and pay money. That doesn't show the persecution on nexus to a protected ground that you're arguing. Why do we have to accept your description of that testimony? That is not the was murdered. The persecutors called Ms. Barrera-Arreguin and said, we will do to you what we just did to her. They had just murdered her. That is not just an idle threat. That is a menacing, immediate, credible threat. They just murdered one wife of a commander called Ms. Barrera-Arreguin, the wife of the other commander, and said, we will do to you what we did to her. That is the sort of threat that is addressed. The trouble is that's not necessarily family. That's some sort of criminal and slash non-protected political persecution. Your Honor, they didn't call a neighbor and say, we will murder you because of what the husband did. They didn't call his childhood friends. They called his wife. They called her and said, we will murder you because of her relationship to him. It is not in furtherance of criminal. Wait a minute. The protected group is only her family. The protected group is not defense group. The persecution is the defense group. That's a different persecution than your argument. Your Honor, the protected social group that has been proffered from the beginning, which the immigration judge and the agency found is cognizable, was a nuclear family of Arsenio Hinojosa. Wait. Now your petition said immediate family. Your brief is wrong or misleading on that because the petition specifically said immediate family. Your Honor, I believe that immediate family and nuclear family have been used throughout as synonymous. Yeah. Then how can we have briefing on that, what seems like a silly issue? Your Honor, and it's not a silly issue. The respondents did... In any event, the defense group was not either the nuclear or immediate or extended family. Exactly, Your Honor. And Ms. Barrera-Arreguin does not belong to the defense group. They threatened her because she was related to him. That's your because. That's not the only plausible interpretation of the threat as described. The agency tries to say on one hand that this is general criminal violence, but on the other hand says they specifically, the agency found that they targeted her as retribution for him and because of her, because of his beliefs. How can they target her as retribution and how can they target her because of his beliefs and not be choosing her because she's related to him? They cannot.  Yes, Your Honor. Yeah, well, they probably didn't like that. But they never said they didn't like that, Your Honor. They threatened to do to her what they did to another wife of a commander. It is the family relationship that is the core of this. She wasn't related to the other woman. She was similarly situated, Your Honor. So when we're looking at her... Okay, what's their case law on that for inferring that that's part... I mean, it's not... The inferences you are drawing and the associations that you're requesting are not the only view of the facts. And we have a standard of view that we have to obey. Your Honor, Krasnopetsev specifically speaks to the concept of similarly situated people. One of the reasons why Krasnopetsev was denied was because this court found similarly situated people were not harmed. When we're looking at particular social groups, looking at distinction and particularity... Similarly situated members of the group. And here, Your Honor, I disagree that that's what Krasnopetsev says. One of the things they say is that similarly situated people who are not being harmed undermines the idea that you would be harmed. Here we have someone who is similarly situated who was murdered. And Ms. Barreira-Aguin, it's not a stretch at all to say that she would be murdered for a similar reason. I would like to address the withholding of removal standard as well. This court has drawn attention to the difference between the nexus standard and withholding of removal in asylum... Between asylum and withholding of removal in several recent cases. The standard for asylum says that someone for the persecution suffered and feared. However, withholding of removal says that the protected ground must be because of a protected... So the persecution must be because of a protected ground. And this court has noted in Silvestri-Jerome v. Barre and Garcia-Montezuma v. Sessions that these seem to be two distinct standards. However, the court has not had a You have a circuit court that holds that? Your Honor, the Ninth Circuit has recently stated something about it. In the matter of MFO, which is a recent decision that was recently decided at the board after briefing was completed, they have said that the Ninth Circuit recognizes the distinct standard between withholding and asylum. However, many other circuits have not ruled on it. So the judge and the agency incorrectly stated that just because asylum was denied, therefore withholding was denied. They did not enter into a separate analysis regarding the nexus standard between asylum and withholding of removal. And going back to the merits of the corroboration, when it should not have required that corroboration, Omondi v. Holder says that when the agency requires corroborating evidence for an asylum seeker, they have to detail why that evidence should be sought and how that's reasonable that they seek that corroboration. What case was this? Omondi v. Holder? Omondi? What court? The Eighth Circuit, Your Honor. And we were applying the provision in 1158 8B1Bii that specifically authorizes, if you will, acknowledges that the IJ can require corroboration. Your Honor, yes, it addressed that issue. Omondi's situation was slightly different. That statute, I haven't read it. Your Honor, I'm not sure if it cited that statute directly, but I know that it was better. Well, it missed something. Yeah. And basically in Omondi, they stated that there must be reasoning behind the requirement for corroboration. It cannot be just a blanket statement is here that corroboration is necessary. And I've reserved my last two minutes for rebuttal. Thank you. Thank you. Ms. Robinson? Yes. Thank you. Can everyone hear me? Okay, great. Just barely. Is that better, Your Honor? No. Judge Strauss, can you hear? I can hear, but it's faint. It is a little distant, but I can't hear. Okay, go ahead. Okay. If there's any problems with the audio, please let me know. So, Your Honors, this case involves the petitioner's fear of the Los Viagras group, whom the lead petitioner believes disappeared her husband because he led a rival auto defense group that opposed them. Her beliefs are speculative, but even if she is correct, the agency reasonably concluded that the petitioners did not meet the requirements for asylum or withholding or cap protection, and that Los Viagras was motivated by its own criminal goals. Ms. Barrera's motion to reopen is also speculative, and her declaration states that a new cartel, Cartelias Unidos, has driven the other cartels out of the state and is now in power. This is a different cartel, which arguably undercuts the basis of her original claim. Well, counsel, on that argument, I have trouble with that argument. If the persecutors are drug cartels, why does it matter if the persecution continues if there's a changeover in the dominant cartel, if the persecution is on the same basis? So, Your Honors, I believe that this goes to motivation as well. Well, one can logically infer if it sounds like we have a changing of the illegal guard in this local community. In fact, apparently there were at least two changes because the first cartel that the husband fought was not LV, and now we have Unitas, but they all seem to want to be in if the persecution is otherwise proven by a motion to reopen. I don't think the change, in other words, if they were just street gangs and they were in adjacent neighborhoods and the subsequent threat came from the next door gang, I think it would still be material evidence of continuing a renewed persecution. So, Your Honors, this would also sort of underscore the agency's nexus determination. That I thought was flawed because it was focusing on, as counsel said, the agency focused on the reason the bad guys killed the husband as being the relevant persecution motive, but the relevant persecution motive is the persecution of the petitioner. And that wasn't really, from a nexus standpoint, that wasn't really addressed. So, Your Honor, I would say it goes more to the fact that these various events, as this court printed out, appear to be due to a power of criminal organizations who are seeking control in the area. There's, if anything, her declaration underscores that her fear is actually of generalized violence by criminal organizations. No, this is a family persecution claim, and the government is not arguing that just because it's criminal gangs doing the persecution that you've still got the relevant protected group. Yes, Your Honor. It's just that the motivation the agency found was general violence and a desire by the criminal groups to be in control, and that in and of itself does not... Even if that was the motive for killing the head of a household, if the bad guys then continue... Well, I guess the fact, you know, that's the trouble I have with the facts. If the motivation was financially criminal, as it appears to have been in part, and the persecution continues on the family members, what's that on account of? The agency's analysis wasn't very satisfactory on that. So, Your Honor, I would just say there's no objective evidence that this new cartel was aware of the dispute between the auto defense group and Los Villagras, that they were motivated or would be motivated to harm Ms. Ferreira on that basis. Oh, now, wait a minute, counsel. When LV took over, they knew exactly who had been harassing the prior gang, the husband. Your Honor... And he disappeared. Your Honor, I think that's, at least Ms. Ferreira's testimony, from my understanding of it was that it was after the auto defense group began opposing Los Villagras that they became interested in them. Well, I'm surprised you haven't spent more time on the past persecution issue. I'm not sure that the petitioner can prevail if all those months of relative safety and the lack of any physical harm and even some threats that one would not take lightly. It seems to me that's where the agency is on the strongest ground with a circuit precedent. Yes, Your Honor. So, as this court noted, she was never physically harmed or directly threatened. She relies on isolated occurrences that occurred across a multi-year period. Much of this is based on speculation and there's also any harm that she argues her husband experienced. There's no evidence that it was part of a pattern of persecution tied to the petitioner. The other thing that I would just simply note, Your Honor, as Your Honor emphasized, the fact that she emphasizes the fact that Mr. Hinojosa's partner and his wife were disappeared. They're not, as this court noted, in the proposed particular social group. So that lends further credence to the agency's conclusion that this was not animus toward the family unit itself or any other protected ground, but this was due to a dispute between the two rival auto I would just note briefly the fact that the petitioner argues that her father-in-law and sisters-in-law are not similarly situated. Her husband's sisters also contacted the soldiers about his disappearance. That's at 154 to 57 of the record. And his sisters and father also posted posters publicly asking for information. And it is unclear who is responsible for the disappearance of her brothers-in-law. The prosecutor's report is at pages, I believe, 27 through 36 of the record. And this... I looked that up and that's in Spanish. So I believe page 30 of the record, Your Honor, has the sister-in-law's declaration or report. So it appears... The one that you objected to because it was self-translated? That DHS did, Your Honor, yes. Yeah, that's the only untranslated... that's the only translated page I found. Yes, so and... That's a description. That's a description of what the prosecutors wrote. Yes. Hardly past evidence. Right, Your Honor. And even that says it's clear. So do we have a translation of what the prosecutor wrote? I do not believe so, Your Honor, but I know Petitioner's point that out. As for withholding, I would just note Petitioner did not exhaust this argument before the board or the agency. It was not raised at all. And it was also not meaningfully argued before this court. As far as the a reason standard or one central reason, I believe that argument should have been exhausted before the agency in the first instance. But I would say that the Ninth Circuit has found in Barajas-Romero v. Lynch in 2017 that the two standards are different. This court has not ruled on it. And the government's position is that while the Immigration and Nationality Act expressly adopts a motive standard for asylum, there is not an express motive standard for withholding beyond requiring the applicant to show that his life or freedom would be threatened because of a protected trait. The Supreme Court has stated previously that the words because of mean by reason of. That's in Gross v. FBL Financial Services, 557 U.S. 167. It's in 2009. And the board has emphasized that using different motive standards for asylum and withholding would create practical differences. And so far as every application for asylum necessarily contains one for withholding. So having a different motive standard for the two would require a bifurcated analysis of a single sub-issue. So I do not believe that this issue is exhausted and that the court needs to decide it, but the government would oppose that interpretation. As far as the claim for protection under the CAT, I would just note that again there was no past persecution here, let alone torture. And that there's no, the people whom she fears, Los Viagras or now apparently this new cartel, are private actors. And so she has not shown the requisite government action or acquiescence here. When Ms. Pereira and her sister-in-law sought help from soldiers after Mr. Hinojosa disappeared, the soldiers advised them to file a missing persons report with the prosecutor's office and then searched for him after the report was filed. That's pages 94 and 48 of the record. So the fact that the authorities were ultimately unsuccessful does not establish acquiescence. And there's also, of course, as this court is aware, the general country conditions evidence submitted by the government in these types of cases outlining the efforts that the Mexican government is taking against these cases. Finally, I'll just quickly turn to petitioner's argument about the evidence. In Ming Dai, the Supreme Court noted that even if the board treats a non-citizen's testimony as credible, the agency does not have to find that evidence persuasive or sufficient to meet the burden of proof. So Ms. Pereira's opinion regarding who harmed her husband and her generalized testimony regarding the video she had seen where someone from Los Viagras took responsibility were different things that she had heard about secondhand from other people. She, or the Facebook threats that supposedly an acquaintance received, she admitted that she did not provide objective evidence of that. She did not print out the supposed Facebook threats or provide the video. So even though her testimony was credible, the agency was not compelled to accept it as fact, that she could credibly testify that that was her opinion, but the agency did not need to find that sufficient to meet her burden of proof. And I'm just going to quickly reemphasize that even if Ms. Pereira is correct about who has been responsible, the agency reasonably concluded that these groups were motivated by criminality or that the incidents with Los Viagras were due to a dispute between these two rival groups. The record doesn't compel the conclusion that there was any animus toward the family or any other protected ground, or approximately... Counsel, did I misread the BIA opinion? I thought it, when it got to the issue of well-founded fear, which of course it has to, after the finding of no past persecution, I thought it upheld the analysis of no well-founded fear and then went on in the alternative to say no nexus because LV's motivation was criminal. Yes, your honor. So I believe that the agency found no well-founded fear because none of the close or extended family members were harmed. The petitioners themselves lived free from harm and threats for almost a year after Mr. Hinojosa disappeared, and the agency found no clear error in the immigration judge's finding that Los Viagras was motivated by criminal goals rather than on account of any protected basis held by Ms. Pereira. And as this court noted, the standard of review here is abusive discretion, whether the agency could have found what it did. And here the agency reasonably found there's insufficient evidence to anyone would harm her if she returned to Mexico or that there was any nexus between any harm she feared and a protected ground. And the agency's denial of the motion to reopen was also a proper exercise of its broad discretion, given the facts that were laid out in her declaration. Thank you, your honors. On the Omandi case, how do you distinguish that? Counsel's interpretation of our case. With the full disclosure, your honor, I am not familiar with it, so I do apologize for that. But I don't want to pine on something that I'm unfamiliar with. I'm happy to submit further on the issue if the court should require that. Very good. Is there time for rebuttal? May I begin? Yes, please. Quickly, the self-translated document was Ms. Pereira-Aguin's declaration. That was pages 37 through 40. The prosecutor's Spanish report that was submitted is AR 33 through 36. The translation, which was not self-translated, is AR 27 through 32. So that is a non-self-translated version of the prosecutor's report, not a description of the prosecutor's report. That's the actual prosecutor's report. An important thing to note is that we looked and it didn't play out that way. I just pulled it up. AR 27 through 32 is the translation of the prosecutor's report. 33 through 36 is the prosecutor's report in Spanish. 37 through 40 was the self-translated declaration and the declaration. And then AR 8 through 9 is the non-self-translated version of  I'm glad you clarified that. You mentioned the best evidence rule. That does not apply in immigration. The rules of evidence do not apply in immigration court and should not be required on the motion to reopen. I did not mean it as legally applicable. I just meant it as something lawyers are familiar with. Yes. And we discussed the past persecution. Even if Ms. Pereira-Aguin's menacing immediate threats were not, if the court finds it did not constitute past persecution, she still has a well-founded fear of future persecution based on the disappearance of her brother-in-law and the threat she received. Asylum does not always have to include past persecution. It can also be based solely on a well-founded fear for future persecution. Thank you. Thank you, counsel. The case has lots of nuances and issues to it, and it's been well-briefed and argued, and we will take it under advisement. Appreciate your joining us in an open court remote argument, which it worked well, we found in the last year and a half. It worked. It's not perfect, but it gets things done. So thank you for helping us. Thank you, your honor. And I did want to thank counsel as well for being amenable to my motion to appear remotely, just given my own situation. So thank you. Thank you very much, your honors. Thank you, counsel. Very good. Stay healthy.